## LEGG *v.* LEGG

No. 43150 October 12, 1964 168 So. 2d 58

*Jack Parsons,* Wiggins, for appellant.

*R. L. Calhoun,* Hattiesburg, for appellee.

14

BRADY, TOM P., J.

These are the relevant facts in the above styled case. The appellant and appellee were married in 1933 and divorced on April 9, 1958, in the Chancery Court of Forrest County, Mississippi, Cause No. 18,594, at which time there was a property settlement, involving two lots, entered into between appellant and appellee. This property settlement was affirmed by the Chancery Court of Forrest County, in which appellant received one house located on a lot in the city of Hattiesburg, and the appellee received another house on an adjoining lot. At the time of their divorce appellant alone had purchased the lots and the houses situated thereon. After the first property settlement was affirmed by the chancery court, appellant and appellee were remarried. At the time of their remarriage appellant conveyed to appellee an undivided one-half interest in and to both lots in question, and the original commissioner's deed authorized by the chancery court, which vested title in the appellee to lot, Municipal 509 Elizabeth Avenue, was destroyed.

A second divorce suit was brought by the appellee and a final decree was granted in said Chancery Court again divorcing the appellee from the appellant. Ten days after their divorce they were remarried on April 19, 1958, and it was apparently on this date that the appellant gave the appellee the deed conveying an undivided one-half interest in both properties. The record further shows that the two lived together for about eleven months, when the appellee went to California and resided with her daughter, who was married out there. After the daughter was married, the appellee went to Breckenridge, Texas, where the appellant picked her up and brought her back to Hattiesburg, where she resided in the same house with him until June, 1961.

At the time the second divorce was instituted, it appears that she had not lived with appellant for over a year, and the appellant and appellee were cotenants in common of two lots situated in the city of Hattiesburg, being Municipal 507 Elizabeth Avenue, and Municipal 509 Eleziabeth Avenue. Each lot was forty feet in width and approximately two hundred feet in depth. There were two deeds of trust showing of record and on January 13, 1962 a partition suit was filed, being Cause No. 21,325 in the Chancery Court of Forrest County, styled Mrs. Cecile L. Legg v. Harvey Legg, et al., for the purpose of partiting said property known as Municipal 509 Elizabeth Avenue, Hattiesburg, Mississippi. Thereafter, on January 20, another partition suit was filed, being Cause No. 21,341 in the Chancery Court of Forrest County, styled Mrs. Cecile L. Legg v. Harvey Legg, for the purpose of partitioning the property known as Municipal 507 Elizabeth Avenue, Hattiesburg, Mississippi. On the trial of partition suits, Causes No. 21,-325 and 21,341, by agreement of the parties and their counsel, were tried together. On this hearing it was further stipulated and incorporated in the record that it was admitted in the pleadings that the property involved is not susceptible of a division in kind.

After the evidence was all in and both sides had rested, through negotiations of the parties and their attorneys, an *agreed final decree* was entered by the court on June 22, 1962, showing that both causes had been consolidated and that by agreement the complainant, Mrs. Cecile L. Legg, was to convey to the defendant, Harvey Legg, her entire undivided one-half interest in the properties involved in said causes under the following terms and conditions. "The defendant is to pay to the complainant, within thirty (30) days from this date, the sum of $4,200.00 cash, at which time the deed from Mrs. Cecile L. Legg to Harvey Legg, which has been duly executed and deposited in escrow with R. L.

Calhoun, attorney, shall be delivered to the said defendant, Harvey Legg. The said Harvey Legg is to pay all court costs in these causes, being Causes #21,341 and #21,325.'' There was the further stipulation in the decree that in the event the defendant, Harvey Legg, ''does not pay to R. L. Calhoun, escrow agent of Mrs. Cecile L. Legg, the sum of $4,200.00 within thirty (30) days from the date of this decree, it is further agreed that the Chancery Clerk of Forrest County, Mississippi is hereby appointed as a special commissioner to sell all of the property above described in a public sale, to the highest bidder for cash, within legal hours, in the time, manner and form *as under an execution sale, as required by law,* and out of the proceeds of such sale, all costs incident to this proceeding shall be first paid and out of the remaining proceeds the same shall be divided equally between Mrs. Cecile L. Legg (appellee) and Harvey Legg (appellant).'' (Emphasis ours).

The record further discloses that Harvey Legg failed and refused to make said payment of $4,200 within thirty days from the date of said decree. The special commissioner appointed in said decree, after fully advertising through his commissioner's notice of sale, sold said lands as provided under the terms of said agreed final decree of June 22, 1962, and filed his commissioner's report of said sale on March 4, 1963. It is from this decree dated May 24, 1963, approving and confirming said commissioner's sale, that the appellant, Harvey Legg, has taken this appeal.

There are six errors assigned by the appellant, which are:

''1. The Court erred when it did not permit the appellant to show the property could have been partitioned in kind and did not find the property was not subject to being partitioned in kind or best interest of the parties.

"2. The Court erred when the Court did not permit the Appellant to show the property was sold for a grossly inadequate price.

"3. The Court erred when the Court held that the partition was a voluntary and without the signatures of the parties being subscribed to the partition instrument.

"4. The Court erred when the Court held that the decree ordering the sale was final rather than interlocutory.

"5. The Court erred when the Court did not permit testimony to be adduced at the time of the final report of the special commission.

"6. The Court erred in approving the report of the special commissioner."

The appellee filed a motion to dismiss the appeal on September 3, 1964, for the following reasons: First, an appeal cannot be taken from a court decree confirming a sale of the property under prior court decree, such confirmation not being a final decree of the court within the purview of the appeal statutes; and second, the agreed final decree between the parties in this cause was entered by the court on June 22, 1962 and no appeal therefrom will lie.

If the appellee's motion to dismiss the appellant's appeal is well taken, there would be no reason to consider the grounds urged in appellant's assignment of errors, but the motion to dismiss cannot be sustained for the reason that appellant's appeal embodies grounds which are outside the stipulations and agreements made and entered into between the parties to this cause and which are not embodied in the final decree of June 22, 1962. It was not agreed between the parties that the sum of $4,500 bid by the appellee was the best and highest bid. This amount was open for determination and question, and was not concluded by the final consent decree of June 22, 1962. It follows, therefore, that an appeal therefrom is permissible by

the appellant though the appeal involves the approval by a decree which confirms a commissioner's sale of lands made under a former, final, consent decree. To dismiss the appeal on the grounds urged by appellee would invalidate the appellant's statutory rights. If the answer of the appellant and his assignment of errors related solely to the agreements set forth in the final, consent decree, then the motion of dismissal would be sustainable, since the law is well settled that there is no appeal from a final, consent decree.

The decree of June 22, 1963 was a final decree. On its face it stipulates that a settlement had been reached between the parties to the suit and their representatives as to their property rights and interests, and it was therefore a consent decree which was entered. By this decree the appellant was allowed thirty days from June 22, 1962, namely, until July 22, 1962, to pay unto appellee the sum of $4,200, and if on said date appellant had not done so, then by agreement and consent the lands involved were to be sold by the chancery clerk, Mr. Clyde W. Easterling, who had been appointed as a special commissioner to make the sale of said lands, as under an execution sale, in the event the appellant did not pay to the appellee the $4,200 adjudicated by agreement to be her pecuniary right in said property.

The appeal statute which has application is Section 1147 of the Code of 1942, Annotated, captioned, ''Appeal from final judgment or decree''. ''An appeal may be taken to the Supreme Court from any final judgment of a circuit court in a civil case, not being a judgment by confession or from any final decree of the chancery court, not being by consent, by any of the parties or legal representatives of such parties; but such appeal shall operate as a supersedeas only when the party applying for the same shall comply with the terms hereinafter prescribed; and in no case shall such appeal be held to vacate the judgment or decree.''

There can be no doubt that the decree of June 22, 1962 was a final decree. Justice Griffith in his book, "Griffith's Mississippi Chancery Practice", under the title, "The Decree", sections 609, 610 and 611, points out in detail what it takes to constitute a final decree. At page 649 it is said: "A final decree is one which finally determines and settles the case on its complete merits — which neither omits nor reserves any of the material issues with respect to the merits — and leaves nothing remaining to be done, except those merely formal, or ministerial or executive subsequent orders or decrees necessary or proper to enforce the final decree. The decree is final when it terminates the actual litigation between the parties and leaves nothing to be done except to enforce what has been determined. In other words, if a decree leave no matter of the actual merits undertermined which was material to a judicial determination on the merits of the case it is final."

In the case of Worthy v. Graham, 246 Miss. 358, 362, 149 So. 2d 469, the foregoing quotation from Griffith's Chancery Practice can be found. The case of Worthy v. Graham has controlling application to the case at bar. Graham was the owner and holder of certain promissory notes and deeds of trust securing them which were executed by the defendants, J. W. Worthy and others. Some of the notes were past due and in the amount of $6,000 plus interest and there was an additional amount still outstanding on other notes. A substituted trustee was appointed in the place of a former trustee. The Chancery Court of Monroe County, after hearing the cause, by decree of September 28, 1961, found the defendants indebted to the said T. W. Graham in the sum of $6,000, found that Frank A. Riley had been properly substituted as trustee in place of John Anderson, found that such substitution should be ratified and confirmed and therefore adjudged that the complainant was entitled to have the substituted trustee advertise and sell the lands de-

scribed in the deed of trust for the full amount due unless the defendants within thirty days from the date of the decree should pay the amount then due on the notes past due; that the trustee was authorized and directed to advertise and sell the property in accordance with the terms of the deed of trust as to advertising and selling for the payment of the full amount of the notes; that the action of the trustee in making the sale in accordance with this decree would stand confirmed without further order of the court. Costs were taxed against the defendants, who prayed for an appeal in open court and the same was granted. It appears further that on April 4, 1962 the substituted trustee in this case filed a report in the Chancery Court of Monroe County in which he said in pursuance of the decree of the court of September 28, 1961, directing him to sell the described property, that he did so on February 6, 1962 at the west door of the Monroe County courthouse in the city of Aberdeen, within lawful hours, having first given notice as required by said deed of trust and said decree, by publishing same in three public places, proceeded to sell the land at public option to the highest bidder when T. W. Graham, appellant, bid $12,500, which was the highest and best bid. The same was struck off to him and he was declared to be the purchaser; that he had executed a trustee's deed to the purchaser and the terms of the sale had been fully complied with and that the property sold for a fair and reasonable price and he prayed for the confirmation of the sale and was discharged from further duties.

On April 4, 1962, the date on which the report was filed, the substituted trustee notified the defendants in the cause in writing that on April 13, 1962, at nine o'clock, he would apply to the Chancellor in chambers at Pontotoc for confirmation of the sale. On April 12, 1962 solicitor for the defendants filed what he denominated as an answer to the petition to confirm, in which

he set out first, that the defendants deny that proper and legal notice was given of the sale and demands strict proof thereof; and second, that the deeds of trust were barred by the statutes of limitation under sections 719 and 722. On April 13, 1962 a decree was entered by the Chancellor which recited that it came on for hearing on motion of the substituted trustee, under said deeds of trust in accordance with the decree of September 28, 1961, for the confirmation of property sold by him, the property being described; the decree further recited that it appeared to the satisfaction of the court that the said substituted trustee complied in all respects to all the terms of said decree, that the land brought a fair price, and that T. W. Graham was the best and highest bidder; that the said substituted trustee had executed a deed of conveyance to the said T. W. Graham and that notice according to law had been given to all parties in interest; that a hearing would be held that date. It was therefore ordered, adjudged and decreed that the sale should be ratified and confirmed.

Notice by the solicitor for the defendants to the chancery clerk on the date of April 19 shows that they desired an appeal from the decree dated April 13, 1962, which decree confirmed the sale of certain lands therein described in said decree. The applicable part of section 1147, Code of 1942, Rec., as pointed out in the opinion is as follows: ''An appeal may be taken to the Supreme Court . . . from any final decree of the chancery court, not being by consent, by any of the parties or legal representatives of such parties''. The Court, speaking through Justice Lee, held that the decree dated April 13 confirming the sale of the lands involved was not a final decree, but, on the other hand, that a decree on a bill to enforce a vendor's lien which purports to be made on a full hearing on the bill, exhibits and other proceedings in the case and establishes the right of complainant to enforce his claim against the land and ap-

points a commissioner to sell it unless within a specified time the defendants pay the complainant the sum found due and all costs, and directs the commissioner in case of sale to report his proceedings at the next term, is not an interlocutory but a final decree.

It is obvious therefore that the decree in the case at bar dated June 22, 1962 which required, in substance, the sale of the property after having been advertised by the chancery clerk acting as a special commissioner unless the appellant paid the $4,200 within the thirty days after June 22, 1962, was in fact what had been agreed to between the litigants and parties to this lawsuit, the appellant having the right to either purchase appellee's interest in the property for $4,200 or let the property be sold by the special commissioner and carry out the terms and conditions of the agreed decree.

██ ██ Considering next the assignment of errors urged by the appellant, we find that there is no merit in assignments 1, 3 and 4, for the reason that these errors are contradictions of the specific agreements embodied in the final consent decree of June 22, 1962, namely: 1, the parties to the decree had agreed that the land could not be partited in kind or to the best interests of the parties; 3, the signatures of the parties were not necessary to partition instrument; and 4, the decree approving and setting up the terms of the agreement and sale was a final decree and not interlocutory as urged by appellant. Worthy v. Graham, supra; Grand Lodge Colored K. P. v. Barlow, 108 Miss. 663, 67 So. 152; and Hunter v. Stanford, 198 Miss. 299, 22 So. 2d 166.

██ ██ We will analyze errors 2, 5 and 6 together. These errors are, respectively, 2, the court did not permit the appellant to show that the property sold for a grossly inadequate price; 5, the court did not permit testimony to be adduced at the time of the final report of the special commissioner; and 6, the court

erred in approving the report of the special commissioner.

Insofar as errors 2 and 5 are concerned, we agree that they would constitute matters for review of the pleadings and the facts as reflected in the record showed them to exist. But this is not so. There is absolutely nothing in the record to indicate that the court denied the appellant the right to show that the price was grossly inadequate. The record discloses that on March 4, 1963 the commissioner sold the land after properly advertising the same on February 5, February 12, February 19 and February 26, 1963; that the appellant was summoned to appear at the commissioner's report of sale on March 15, 1963 to show cause why it should not be approved and confirmed. The record discloses that on March 15, 1963 the appellant filed an answer to the commissioner's report of sale and urged that it should not be approved and as reasons therefor urged the identical grounds which are now presented in the assignments of error, except error 5, which charges that appellant's testimony was not allowed at the time of the final report. The hearing set for Friday, March 15, 1963, being objected to, was reset for Monday, March 25, 1963 and, upon objections, was reset again on March 29, April 12, April 19, April 26, May 3, May 17, and finally on May 24, 1963 the hearing was held. That the appellant had ample time to prepare his proof under his answer cannot be doubted.

The record fails to disclose that the appellant attended the sale or participated therein. The record is silent as to any objection being made by the appellant at the time of the sale. It does not disclose that he bid or had anyone else bid on the property. No objection can be found at the time of the sale. No motion was made nor any bond posted to arrest the operation of the sale by the special commissioner on the part of the appellant. No offer of proof nor bill of exceptions

or review on the part of the appellant can be found in this record. The record is completely silent as to any statements or acts on the part of the appellant, save the eight continuances and the written answer of the appellant.

Without one scintilla of evidence as to the inadequacy of the sale price of the lots or to show that testimony was offered and not permitted to be given at the time of the hearing of the special commissioner's report, this Court is asked to reverse the finding of fact of the Chancery Court of Forrest County on an assignment of errors based solely on appellant's pleadings.

██ We are restricted by what is embodied in the record. Only evidentiary facts found in the record are subject to our review. We find no evidence of any effort on the part of the appellant to present the evidentiary matters to the Chancery Court of Forrest County, of which the appellant now complains.

To the contrary, we find the decree of the Chancery Court of Forrest County specifically reciting that it heard the report of the commissioner on Friday, May 24, 1963 at 10:00 A. M. at the Forrest County Courthouse; that "having heard and considered said report and the proof thereon, the Answer of Harvey Legg, Defendant, to said Commissioner's Report of Sale, . . . . and being fully advised in the premises, . . . . .", the Chancery Clerk, Clyde W. Easterling, strictly complied with the terms of said decree in the advertisement of Notices of Sale of said land and the conduct of said sale, as provided by statute, on March 4, 1963. The chancellor approved and confirmed the sale of the lots involved in the sum of $4,500 to appellee "as the highest bidder for cash."

The facts in the record are conclusive when evaluated against an unsubstantiated plea of the appellant in this cause.

We hold, therefore, that the record wholly fails to show, first, that the property sold for a grossly inadequate price; second, that there is no proof that the lower court did not permit appellant's testimony to be presented at the time of the final report of the special commissioner, while the decree recites to the contrary; and third, the lower court did not commit error in approving the report of the special commissioner. Sections 977, 1313, 1531, 1533, Code of 1942, Rec.

Therefore, motion of appellee to dismiss the appellant's appeal is overruled, and the decree of the Chancery Court of Forrest County is affirmed.

Affirmed.

*Kyle, P. J., and Ethridge, Gillespie and McElroy, JJ.,* concur.